IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SAMUEL CALDERON-SITIRICHE | * |
| Plaintiff | * Civil No. 98-1130(SEC) |
| v. | * |
| EDUCATORS MUTUAL LIFE INS. CO. | * |
| Defendant | * |

**OPINION AND ORDER**

This is an action to enforce coverage under an insurance policy. Pending is the defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). **(Docket # 4)**. Because the Court concludes that the plaintiff has alleged facts which suggest that personal jurisdiction exists, it denies the defendant's motion.

**Rule 12(b)(2) Standard**

Once it has been challenged on a Fed. R. Civ. P. 12(b)(2) motion to dismiss, it is incumbent upon the plaintiff to prove that personal jurisdiction over the defendant exists. See Massachusetts School of Law at Andover, Inc. v. American Bar Association, 142 F.3d 26, 34 (1st Cir. 1998) (hereinafter "Massachusetts School of Law"); Alers Rodríguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997). While the plaintiff must ultimately shoulder the burden of proving the existence of personal jurisdiction, when, as now, the district court considers the motion to dismiss without a hearing, the plaintiff need only make a *prima facie* showing of jurisdiction. See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995).

Under the *prima facie* standard, the plaintiff "must make a showing as to every fact required to satisfy both the forum's long-arm statute and the due process clause of the Constitution." Alers

**Civil No. 98-1130(SEC)**                                                                                                    2

Rodríguez, 115 F.3d at 84 (citation and quotation marks omitted). This showing "must be based on evidence of specific facts set forth in the record." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992) (citing Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 9 (1st Cir. 1986)). The plaintiff "must go beyond the pleadings and make affirmative proof." Id. (quoting Chlebda v. H.E. Fortna & Bro. Inc., 609 F.2d 1022, 1024 (1st Cir. 1979)). He or she "may not rely on unsupported allegations in [his or her pleadings] . . . ." However, "[i]n determining whether a *prima facie* showing has been made, the district court is not acting as factfinder." Id. The Court must "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[] them in the light most congenial to the plaintiff's jurisdictional claim." Massachusetts School of Law, 142 F.3d at 34 (citing Ticketmaster-New York v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994) (hereinafter "Ticketmaster")). The court may then "add to the mix the facts put forward by the defendant[], to the extent that they are uncontradicted." Id. (citation omitted). In any event, the court need not credit "'conclusory allegations or draw farfetched inferences.'" Id. (quoting Tickemaster, 26 F.3d at 203).

**Background**

The plaintiff, Samuel Calderón-Sitiriche, is a physician residing in the Commonwealth of Puerto Rico. (**Docket # 6**, at ¶ 3.a). The defendant, Educators Mutual Life Insurance Company (hereinafter "EMLI"), is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Lancaster, Pennsylvania. (**Docket # 4**, Kimberly A. Rankin's Unsworn Statement Under Penalty of Perjury ¶ 1). At a convention of the American College of Physicians held in Puerto Rico in 1994, Calderón-Sitiriche applied for coverage under a group policy held by the American College of Physicians Trust, and underwritten by EMLI.

**Civil No. 98-1130(SEC)**                                                                 3

(**Docket # 7**, Samuel Calderón-Sitiriche's Unsworn Declaration Under Penalty of Perjury, at ¶ 2; **Docket # 4**, at ¶ 13, Kimberly A. Rankin's Unsworn Statement Under Penalty of Perjury ¶ 12, and Exhibit 2). In essence, the policy provides coverage for office overhead expense in the event of, and during, total disability of the insured. (**Docket # 4**, Exhibit 1).

Calderón-Sitiriche's application was processed by Group Insurance Administrators (hereinafter "GIA"), a business entity separate and distinct from EMLI, at it offices in Havertown, Pennsylvania. GIA in turn forwarded the application to EMLI who, after review, notified GIA of the acceptance of the application and appropriate premium. GIA then issued a certificate of individual coverage to Calderón-Sitiriche. (**Docket # 4**, Kimberly A. Rankin's Unsworn Statement Under Penalty of Perjury ¶¶ 13-16). The group policy covering Calderón-Sitiriche was delivered in, and is governed by the laws of, the State of Delaware. (**Id.**, Exhibit 1).

In 1995, Calderón-Sitiriche became totally disabled to perform the material and substantial duties of his occupation. (**Docket # 1**, at ¶¶ 8-9). EMLI began payments under the policy to Calderón-Sitiriche in June, 1995, but continuously requested "an ever increasing amount of documents and/or information to 'substantiate' certain items contained in the . . . insurance claim, particularly information about bank loans and salary payments." (**Id.** at ¶¶ 13, 14). Calderón-Sitiriche complied with EMLI's requests, but after August, 1996, EMLI refused to make any further payments under the policy. (**Id.** at ¶ 15). Calderón-Sitiriche kept applying for benefits until EMLI's counsel "informed [him] [through a letter dated November 6, 1997,] that his claim had been denied[,] and that [EMLI] would continue to refuse to cover and/or reimburse" the expenses

**Civil No. 98-1130(SEC)**                                                                                                          4

claimed.[1] (**Id.** at ¶ 20). Calderón-Sitiriche also affirms that "twice during 1997, [EMLI] sent Jim Daley, a claims adjuster who was acting on behalf and for the benefit of [EMLI], to evaluate him." (**Docket # 7**, Samuel Calderón-Sitiriche's Unsworn Declaration Under Penalty of Perjury, at ¶ 6). On February 11, 1998, Calderón-Sitiriche filed this action seeking enforcement of coverage under the policy, and to recover all the expenses accrued since the alleged refusal of coverage, plus damages.

On May 29, 1999, EMLI moved to dismiss this action for want of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (**Docket # 4**). As arguments for dismissal, EMLI asserts, and Calderón-Sitiriche concedes,[2] that it is not authorized to do business in Puerto Rico; that it has no offices or employees in Puerto Rico; that it has never owned any real property in Puerto Rico; that it has no telephone listings, addresses or bank accounts in Puerto Rico; and that it does not pay taxes to the Commonwealth of Puerto Rico. (**Id.** Kimberly A. Rankin's Unsworn Statement Under Penalty of Perjury ¶¶ 2-11). EMLI also affirms, but Calderón-Sitiriche strongly disputes, that it has no agents in Puerto Rico; that it has never advertised in Puerto Rico; and that no one from EMLI has ever traveled, initiated any calls, or sent any correspondence to Puerto Rico, in connection with the application for, or issuance of coverage under, the policy involved in this suit. (**Id.** ¶¶ 4, 6, 17). In its motion, however, EMLI does not develop an argument for dismissal. Rather, it goes on to state the applicable law and, without really explaining why, assert that it is beyond the reach of Puerto Rico's long-arm statute; that under the facts alleged, Calderón-Sitiriche has failed to show that EMLI purposely availed itself of the privilege of conducting activities in Puerto Rico; and that, even

---

[1] The policy, however, is apparently still in force. (**Docket # 1**, at ¶¶ 16-18).

[2] **Docket # 6**, at ¶ 4.

**Civil No. 98-1130(SEC)**                                                                                                    5

assuming that it did, asserting jurisdiction over it, under the circumstances of this case, would not comport with fair play and substantial justice. **(Docket # 4)**.

**Applicable Law/Analysis**

"[T]he extent of the necessary jurisdictional showing varies depending upon whether a litigant asserts jurisdiction over an adverse party under a theory of 'general' or 'specific' jurisdiction." Ticketmaster, 26 F.3d at 204 n.3 (citation omitted). General jurisdiction, which is "broad in its ambit," Pritzker v. Yari, 42 F.3d 53, 59 (1st Cir. 1994), "exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Specific jurisdiction, which "is narrower in scope[,] . . . may only be relied upon 'where the cause of action arises out of, or relates to, the defendant's forum-based contacts." Pritzker, 42 F.3d at 60 (quoting United Elec. Workers, 960 F.2d at 1088-89)). "[T]he standard for general jurisdiction is considerably more stringent" than the standard for specific jurisdiction. Donatelli v. National Hockey League, 893 F.2d 459, 463 (1st Cir. 1990) (quoting Glater v. Eli Lilly & Co., 744 F.2d 213. 216 (1st Cir. 1984)). Because in this case the facts are too tenuous to demonstrate the existence of general jurisdiction, the Court focuses its analysis exclusively on specific jurisdiction.

In diversity cases, a federal court "is the functional equivalent of a state court sitting in the forum state," Ticketmaster, 26 F.3d at 204 (citation omitted), and its "personal jurisdiction over a nonresident defendant is governed by the forum's long-arm statute." Sawtelle, 70 F.3d at 1387 (citation and internal quotation marks omitted). "The court must, therefore, find sufficient contacts between that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Id.

**Civil No. 98-1130(SEC)**                                                                 6

Puerto Rico's long-arm statute is found in Rule 4.7 of the Rules of Civil Procedure for the Commonwealth of Puerto Rico, which permits the exercise of personal jurisdiction over an out-of-state defendant who has "[t]ransacted business in Puerto Rico personally or through his agent. . . ." P.R. Laws Ann. tit 32, App. III, R.4.7(a)(1) (1983). Rule 4.7 has been interpreted, both by the Supreme Court of Puerto Rico and the First Circuit, to extend "as far as the Federal Constitution permits." Pritzker, 42 F.3d at 60; see also Dalmau Rodríguez v. Hughes Aircraft Co., 781 F.2d 9, 12 (1st Cir. 1986); Vencedor Mfg. Co., Inc. v. Gongler Industries, 557 F.2d 886, 889 (1st Cir. 1977); A.H. Thomas Co. v. Superior Court of Puerto Rico, 98 P.R.R. 864, 870 n.5 (1970). Because of this coterminous interpretation, "[o]ur inquiry into the requirements of state-law jurisdiction is . . . telescoped into our due process constitutional analysis." Dalmau Rodríguez, 781 F.2d at 12.

Stated broadly, to demonstrate that personal jurisdiction exists, a plaintiff must show the existence of "minimum contacts" between the non-resident defendant and the forum state. See International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945). The First Circuit has developed a tripartite analysis to determine if sufficient contacts exist to exercise specific *in personam* jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle, 70 F.3d at 1389; see also Pritzker, 42 F.3d at 60-61.

AO 72A
(Rev. 8/82)

**Relatedness**

The relatedness test is a "flexible, relaxed standard," Pritzker, 42 F.3d at 61, which "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contact with the forum." Sawtelle, 70 F.3d at 1389 (citations omitted). In this case, Calderón-Sitiriche's action is premised on EMLI's alleged refusal of coverage under the insurance policy. The analysis of whether Calderón-Sitiriche's action "directly arise[s] out of, or relate[s] to," any activities by EMLI within Puerto Rico begins necessarily with McGee v. International Life Ins. Co., 355 U.S. 220 (1957). There, an out-of-state insurer solicited a reinsurance agreement with a California resident. The California resident accepted the offer and mailed the insurance premiums from California until his death. The beneficiary subsequently brought suit in California against the insurer. The Court ruled that a California court could properly exercise jurisdiction over the nonresident insurer, even though it had no offices or agents in California, and apparently never solicited or did any insurance business in California, apart from the policy in question. The Court determined that it was sufficient for due process purposes that the insurance contract "had substantial connection" with California. This substantial connection was found to exist because the policy "was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died." McGee, 355 U.S. at 223. Moreover, the Court noted "that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims[, because] [t]hese residents would be at severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable." Id. See also American & Foreign Ins. Ass'n v. Commercial Ins. Co., 575 F.2d 980, 982 (1st Cir. 1978) (noting that Puerto Rico shares the same interest). More recently, the Court emphasized that "parties who

**Civil No. 98-1130(SEC)**                                                                                                          8

'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950), and citing McGee).

In this case, the insurance premiums are mailed by Calderón-Sitiriche from Puerto Rico, and the policy covers liabilities in Puerto Rico, to wit: the overhead expense of Calderón-Sitiriche's office, which is located in Puerto Rico. The policy specifically provides coverage for expenses such as the salaries and fringe benefits of Calderón-Sitiriche's employees, property and liability insurance premiums, interest payments on debts, taxes and mortgage interest paid on the business premises owned by Calderón-Sitiriche, or the rent for the space used by Calderón-Sitiriche in his business. (**Docket # 4**, Exhibit 1, at 3). While EMLI did not directly solicit Calderón-Sitiriche's business in Puerto Rico, Calderón-Sitiriche affirms under penalty of perjury, that EMLI did so indirectly through GIA. According to Calderón-Sitiriche, at the 1994 convention of the American College of Physicians held in Puerto Rico, he was approached by a salesperson from GIA who represented that "GIA was an agent of . . . [EMLI]; that [EMLI] would be the one [who] would underwrite the Policy, receive the premium payments . . ., and forward the benefit payments under the Policy in the event of . . . disability . . . ." (**Docket # 7**, Samuel Calderón-Sitiriche's Unsworn Declaration Under

**Civil No. 98-1130(SEC)**                                                                                      9

Penalty of Perjury ¶ 4).[3] Calderón-Sitiriche also claims that "twice during 1997," EMLI sent a claims adjuster to Puerto Rico to investigate his claim.[4] (**Id.** at ¶ 6).

Although the policy was not delivered in Puerto Rico, the Court finds that (1) EMLI's indirect solicitation through GIA, (2) the mailing of the insurance premiums from Puerto Rico, and (3) the fact that the subject of the insurance is located in Puerto Rico, suggest a sufficient nexus between Calderón-Sitiriche's action (enforcement of coverage) and EMLI's forum-based activity (underwriting the policy). It should be recalled, moreover, that according to Calderón-Sitiriche, after the initial payments on the policy, EMLI began to request "an ever increasing amount of documents and/or information [from Calderón-Sitiriche] to 'substantiate' certain items contained in the . . . insurance claim . . . ." (**Docket # 1** at ¶¶ 13, 14). EMLI subsequently informed Calderón-Sitiriche through a letter dated November 6, 1997, that it would not make any more payments under the policy.[5] (**Id.** at ¶ 20). In the aggregate, the facts alleged in the complaint, taken together with

---

[3] It should be noted that the application form filled out by Calderón-Sitiriche, purportedly during the 1994 convention of the American College of Physicians in Puerto Rico, states clearly at the bottom that the policy is "Underwritten By: Educators Mutual Life Insurance Company." (**Docket # 4**, Exhibit 2). Moreover, EMLI does not deny that GIA acted as its agent in this case. EMLI only asserts that it is an entity distinct and separate from GIA, and that it has never had any agents in Puerto Rico. (**Docket # 4**, Kimberly A. Rankin's Unsworn Statement Under Penalty of Perjury ¶¶ 4, 13). This does not mean that GIA, as a distinct and separate entity with its principal offices in Pennsylvania, may not, or did not, act as EMLI's agent in Puerto Rico for the purpose of soliciting the insurance policy here involved.

[4] EMLI asserts that no one from the company has ever traveled, initiated any telephone calls, or sent any correspondence to Puerto Rico "in connection with the application for or issuance of coverage under the Policy which is the subject of this case." (**Docket # 4**, Kimberly A. Rankin's Unsworn Statement Under Penalty of Perjury ¶ 17). Yet EMLI does not deny having transmitted information or sending personnel to Puerto Rico, not in connection with the application for, or issuance of, coverage, but in connection with **claims for payment** under the Policy.

[5] "The transmission of facts or information into [Puerto Rico] via telephone or mail would of course constitute evidence of a jurisdictional contact into the forum state . . . ." Massachusetts

**Civil No. 98-1130(SEC)**                                                                 10

Calderón-Sitiriche's statement under penalty of perjury, suggest that Calderón-Sitiriche's claim "grew directly out of 'a contract which had a *substantial* connection with'" Puerto Rico. Burger King Corp., 471 U.S. at 479 (quoting McGee, 355 U.S. at 223). Thus, the Court cannot conclude that Puerto Rico has no "legitimate interest in holding [EMLI] answerable on a claim related to" the contacts it established in Puerto Rico. Id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776 (1984)) (internal quotation marks omitted).

**Purposeful Availment**

The purposeful availment requirement to exercise specific personal jurisdiction has two cornerstones. The first is voluntariness; the second, foreseeability. See Tickemaster, 26 F.3d at 207. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, isolated, or fortuitous contacts, or of the unilateral activity of another party or a third person with the forum state." Burger King Corp., 471 U.S. at 475 (citations and internal quotation marks omitted). The court must focus its inquiry "on whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable.'" Sawtelle, 70 F.3d at 1391 (quoting Rush v. Savchuk, 444 U.S 320, 329 (1980)).

The Court notes at the outset, that "in order to be subject to the jurisdiction of the forum state, a nonresident need have only one contact with the forum, so long as the contact is meaningful." Pritzker, 42 F.3d at 61 (citing McGee, 355 U.S. at 223). Accordingly, "a single contract can fill the bill." Id. See also Burger King Corp., 471 U.S. at 475 n.18. In this case, the Court has already concluded that the insurance policy has a meaningful connection with Puerto Rico. That said, the

---

School of Law at Andover, Inc. v. American Bar Association, 142 F.3d 26, 36 (citing Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)). Therefore, it is proper to factor Calderón-Sitiriche's allegations in this connection in the jurisdictional analysis.

**Civil No. 98-1130(SEC)**                                                                 11

next step is to determine whether voluntariness is present, and whether it was foreseeable that EMLI would be haled into a court of Puerto Rico as a result of insuring Calderón-Sitiriche.

It is appropriate at this juncture to address an argument sketched in the parties' briefs. The policy involved in this case states that it is governed by the laws of the State of Delaware. Although "a choice-of-law *provision* should [not] be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws" for jurisdictional purposes[,]" Burger King Corp., 471 U.S. at 482, the applicability of Delaware law "presents itself in the course of the litigation only after jurisdiction over respondent is established . . . ." Keeton, 465 U.S. at 778. The choice-of-law provision involved here does not require that all suits concerning the payment of claims under the insurance policy be filed in Delaware. Thus, "we do not think that . . . choice of law concerns should complicate or distort the [Court's] jurisdictional inquiry." Id.

**Voluntariness**

The Supreme Court in Burger King Corp. noted that where the defendant "has created 'continuous obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there . . . ." 471 U.S. at 476 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 648 (1950)). In this case, the policy establishes that EMLI will provide coverage in the event of, and during, the insured's total disability, which, as the policy contemplates, can be until death. (**Docket # 4**, Exhibit 1, at 4). The policy specifically covers expenses such as the salaries and fringe benefits of insured's employees, property and liability insurance premiums, interest payments on debts, taxes and mortgage interest paid on the business premises owned by the insured, or the rent for the space used by the insured in his business. (**Id.** at 3). In this case, policy benefits would be sent to Puerto Rico, where Calderón-Sitiriche keeps his

**Civil No. 98-1130(SEC)**                                                                                                    12

office. Thus, under the policy, EMLI created continuous obligations between itself and Calderón-Sitiriche. Nothing in the record suggests that EMLI did not voluntarily undertake to underwrite the policy. If EMLI did not wish to provide coverage to residents of Puerto Rico, it could have excluded Puerto Rico from its policy territory; something it did not do. Moreover, in receiving the insurance premiums, EMLI purposely derived an economic benefit from its insurance contract with Calderón-Sitiriche.

The First Circuit in <u>American & Foreign Ins. Ass'n</u> affirmed the exercise of jurisdiction over foreign insurers under the following facts:

> The insurance companies [involved in this case] operate out of Colombia. The policy [in question] was sold in Colombia to the insured, a Colombian corporation that manufactures glass bottles. The insured shipped a large volume of these bottles to Puerto Rico. One bottle exploded, giving rise to the instant action. The district court, ruling that the insurance policy covered the bottles, concluded that the insurance companies were providing coverage on a subject of insurance located in Puerto Rico and, pursuant to the laws of Puerto Rico, were subject to service of process as unauthorized insurers.

575 F.2d at 981. The First Circuit concluded that

> [t]he insurance companies knew that they were covering the product liability risk arising from these bottles since the terms of the policy assured full knowledge of both the volume of export sales as well as the actual location of the customers. The companies' undertaking to insure a substantial subject of insurance in Puerto Rico was voluntary in (a) meaningful sense, and this cause of action arises directly from that subject of insurance. Thus we conclude that the insurance companies purposely availed themselves of the privilege of conducing activities within the forum State, thus invoking the benefits and protection of its laws.

<u>Id.</u> at 982 (citations and internal quotation marks omitted). The district court in that case had determined that the insurance companies had become "unauthorized insurer[s] in Puerto Rico when [they] knowingly issued an insurance policy which covered a subject of insurance located and expressly to be performed in Puerto Rico," thereby subjecting themselves to service of process under

**Civil No. 98-1130(SEC)**                                                                                                        13

the provisions of Puerto Rico's Insurance Code. Commercial Ins. Co. v. American & Foreign Ins. Ass'n, 370 F. Supp. 345, 350 (D.P.R. 1974).

Similar provisions still govern in Puerto Rico under the local Insurance Code. For example, under § 1.050 "[c]ontracting or transacting" with respect to insurance includes, *inter alia*, "[i]nsuring or reinsuring," and "[t]ransaction of matters subsequent to execution of the contract and arising out of it." Insurance Code of Puerto Rico, P.R. Laws Ann. tit. 26 § 105(4), (5) (1997). Thus, by underwriting the policy involved in this case, and subsequently servicing and investigating Calderón-Sitiriche's claims for payment, EMLI contracted and/or transacted, albeit unauthorizedly, with respect to insurance in Puerto Rico. In doing so, EMLI subjected itself to the exercise of personal jurisdiction by a court of Puerto Rico. See id. § 1005(1).

**Foreseeability**

There is no need to dwell long here. By obligating itself to provide coverage for the expenses of Calderón-Sitiriche's office in Puerto Rico, EMLI should have reasonably anticipated being haled into court in Puerto Rico in connection with the payment of claims under the policy.

**Reasonableness**

At this stage, we consider the so-called "gestalt factors." Sawtelle, 70 F.3d at 1394. These are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interest of all sovereigns in promoting substantive social policies." Id. These factors are usually examined when a plaintiff's showings of relatedness and purposeful availment are not particularly strong. See Ticketmaster, 26 F.3d at 212. Although at this stage the Court is hesitant to make a

**Civil No. 98-1130(SEC)**                                                                 14

determination as to the strength of Calderón-Sitiriche's relatedness and purposefulness showings, it shall nevertheless consider these factors.

**The Defendant's Burden of Appearance**

As the First Circuit has explained, "the concept of burden is inherently relative, and, insofar as staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64. Absent this showing by the out-of-state defendant, the mere burden of having to litigate the case in the forum state "falls short of reaching constitutional significance." Sawtelle, 70 F.3d at 1395. This is the case here; EMLI has failed to demonstrate that litigating this action in Puerto Rico would entail "some kind of special or unusual burden." Pritzker, 42 F.3d at 64.

**The Forum State's Adjudicatory Interest**

The First Circuit in Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 151 (1st Cir. 1995), observed that "[t]he purpose of [this] inquiry is not to *compare* the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." See also Sawtelle, 70 F.3d at 1395. Calderón-Sitiriche's action stems from an insurance policy covering a risk in Puerto Rico. Puerto Rico certainly "has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." McGee, 355 U.S. at 223; see also Travelers Health Ass'n, 339 U.S. at 647 (recognizing that "a state has a legitimate interest in all insurance policies protecting its residents against risks, an interest which the state can protect even though the state action may have repercussions beyond state lines.") (citation and internal quotation marks omitted); Osborn v. Ozlin, 310 U.S. 53, 62 (1940) (same).

**The Plaintiff's Interest in Obtaining Convenient Relief**

A plaintiff's choice of forum has repeatedly been accorded deference by the First Circuit with respect to the issue of the plaintiff's own convenience. See Sawtelle, 70 F.3d at 1395; Foster-Miller, Inc., 46 F.3d at 151; Pritzker, 42 F.3d at 64 Ticketmaster, 26 F.3d at 211. Undoubtedly, it would be more convenient for Calderón-Sitiriche to litigate his action in Puerto Rico than in Pennsylvania, EMLI's home state.

**The Administration of Justice**

In this case, "the interest of the judicial system in the effective administration of justice does not appear to cut in either direction." Ticketmaster, 26 F.3d at 211; see also Sawtelle, 70 F.3d at 1395.

**Pertinent Policy Arguments**

Here, we refer again to Puerto Rico's interest in providing its residents a means of redress against out-of-state insurers.

**Conclusion**

Taking Calderón-Sitiriche's allegations in the light most favorably to his claim, the Court finds that, in the aggregate, he has made a *prima facie* showing of personal jurisdiction. Accordingly, Educators Mutual Life Ins. Co.'s motion to dismiss (**Docket # 4**) is hereby **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of March, 2000.

SALVADOR E. CASELLAS
United States District Judge